United States District Court
Southern District of Texas
**ENTERED**
August 11, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BIANCA LUNA, *et al*, | § § § | |
| Plaintiffs, | § | |
| VS. | § § | CIVIL ACTION NO. 4:15-CV-884 |
| MENDOTA INSURANCE COMPANY, | § § § | |
| Defendant. | § | |

# ORDER

Before the Court is Defendant/Counter Plaintiff, Mendota Insurance Company's Traditional Motion for Summary Judgment and Memorandum in Support (Doc. #23) and Plaintiff's Memorandum in Response (Doc. #25) filed on behalf of Bianca Luna, Abigail Luna and Raul Luna (the "Lunas"). Plaintiffs brought this action for breach of contract seeking a ruling from this Court that the insurance contract that Raul Luna signed was unenforceable because it was ambiguous and/or somebody at Mendota filled in a check box on the insurance application against the Luna's wishes. After reviewing counsels' arguments, evidence and the applicable legal standards in this case, the Court grants Defendant's Motion for Summary Judgment.

### I. Background

On August 9, 2010, Plaintiff, Raul Luna, applied for insurance with Mendota. The contents of the application and specifically what coverage was selected/rejected became the focus of a claim filed by the Lunas when two of the Plaintiffs, Bianca Luna and Abigail Luna, were injured in a car wreck.

On January 14, 2011, in Bryan, Texas, Plaintiffs Bianca Luna and Abigail Luna were passengers in a 2002 red Ford Focus being driven by Graciela Rodriguez-Castilla. Ms.

Rodriguez-Castilla lost control of the car and crashed into a utility pole. Plaintiffs sustained injuries during the crash. Ms. Rodriguez-Castilla was an uninsured driver at the time of the accident.

Plaintiffs attempted to file an insurance claim under their Mendota Insurance Policy, policy number PA 2146896 (the "Policy"). However, Plaintiffs' claims were denied because, according to Defendant, Raul Luna rejected uninsured/underinsured motorist ("UM/UIM") coverage when applying for insurance. Doc. #23-1; *see also* Doc. #23 at 3. Plaintiffs received their official rejection letter from Mendota on May 19, 2011, informing them and their attorney that Mr. Luna rejected UM/UIM coverage on the policy.

Featured on Mendota's application for insurance is a section labeled "Rejection/Selection of Uninsured/Underinsured Motorist Coverage." Under this section there are three different options that are selected by placing a check in the box next to the option and then signing and dating below. The options are: (1) I hereby reject Uninsured/Underinsured Motorist Coverage in its entirety; (2) I hereby reject Uninsured/Underinsured Motorist Coverage as respect to property damage liability coverage; and (3) I hereby elect Uninsured/Underinsured Motorist Coverage and/or Uninsured Motorist Property Damage Coverage at the following limits: _____. On the form on file with Defendant that was provided to Plaintiffs, both options 1 and 2 are selected. Doc. #23-1. Beneath this selection was Plaintiff's signature and the date he signed.

Additionally, beneath this section was a section entitled "Rejection of Personal Injury Protection." Again, in order to reject personal injury protection the applicant was to affix his/her signature on the signature line below. On the application provided to Plaintiffs that was on file with Defendant, Mr. Raul Luna had signed and dated, meaning he had rejected personal injury protection ("PIP").

2

Plaintiffs filed suit on January 14, 2015, in Brazos County, Texas. On April 6, 2015, Defendant removed to this Court. Plaintiffs' contention is that Mendota's insurance application was ambiguous. Plaintiffs contend that Raul Luna only intended to reject UM/UIM coverage with respect to property damage, and that he always intended to have personal injury coverage. In light of this intention, Plaintiffs contend that Raul Luna did not actually check the box next to rejection of UM/UIM coverage in its entirety, but rather someone else was responsible.

## II. Legal Standard

### A. Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be

denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56 burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

### B. Contracts

"Insurance policies are controlled by rules of interpretation and construction which are applicable to contracts generally." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered. *Id.* If a written contract is worded such that it can be given a definite or certain legal meaning, then it is not ambiguous. *Id.* However, if the language of a contract is subject to two or more reasonable interpretations, the contract is ambiguous. *Id.*

Additionally, contracts cannot be challenged by arguing that someone else partially filled the contract out. *Clyde .A Wilson Int'l Investigations, Inc. v. Travelers Ins. Co.*, 959 F. Supp. 756, 763 (1997). "[U]nder established contract principles, a party who executes a contract by

signing his name is bound by the substance of the agreement." *Id.* "To permit a party when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made or allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contract." *Id.* (quoting 12 Am.Jur. 629).

### III. Analysis

Ambiguity, as stated above, is entirely in the purview of the Court. After reviewing the contract language in its entirety, the Court is unconvinced there is more than one reasonable interpretation of the contract/application. Raul Luna rejected every form of UM/UIM and PIP coverage. Accordingly, this Court will not allow any outside evidence to influence the reading of the contract.

Plaintiffs also contend Raul Luna did not check the box rejecting UM/UIM insurance. As evidence for this proposition, Plaintiffs evidence is two-fold: (1) that Raul Luna cannot remember selecting that box; and (2) that Raul Luna's initials were not next to the checked box signifying the rejection of UM/UIM insurance.

Plaintiffs' evidence is severely lacking. First, Plaintiffs' only evidence suggesting Raul Luna was supposed to initial the Mendota application was from the Mendota representative who helped him fill out his application. The representative testified in a deposition that he typically requires the party to check a box and initial next to the box the applicant select. However, contrary to this testimony there is nothing on the application indicating Raul Luna knew he was supposed to initial any box. Plaintiff did not even initial the box he freely admits that he checked–the rejection of UM/UIM coverage for property damage.

Furthermore, the fact that Raul Luna, a plaintiff in this suit cannot "remember" rejecting UM/UIM is no evidence at all. Reliance on unsubstantiated assertions that Raul Luna did not

5

check the box rejecting UM/UIM coverage, is explicitly contrary to the prevailing law. A party who signs a contract is "bound by the substance of the agreement," and may not "deny that it expresses the agreement he made." *See supra* II.B. Contracts.

While Defendant is the movant on this motion and therefore bears the burden, Plaintiffs bear the ultimate burden at trial. As the Fifth Circuit Court of Appeals has held, the standard for determining whether to grant summary judgment is not merely whether there is a factual dispute, "but whether a rational trier of fact could find for the nonmoving party based up on the record evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990). Additionally, "this burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075).

As Plaintiffs have provided this Court with no substantial evidence as to the material facts in this case, this Court holds that as a matter of law, no reasonable jury could find for Plaintiffs on the record before this Court.

## IV. Conclusion

Accordingly, Defendant's Motion for Summary Judgment is GRANTED as to all of Plaintiffs' claims. This action is DISMISSED with prejudice.

It is so ORDERED.

AUG 1 0 2016
Date

The Honorable Alfred H. Bennett
United States District Judge